**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| WILLIS TOWERS WATSON PUBLIC | : **SECURITIES EXCHANGE ACT OF** |
| LIMITED COMPANY, ANNA C. | : **1934** |
| CATALANO, VICTOR F. GANZI, JOHN J. | : |
| HALEY, WENDY E. LANE, BRENDAN R. | : **JURY TRIAL DEMANDED** |
| O'NEILL, JAYMIN B. PATEL, LINDA D. | : |
| RABBITT, PAUL THOMAS, AND | : |
| WILHELM ZELLER, | : |
| | : |
| Defendants. | |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Willis Tower Watson Public Limited Company, ("Willis Tower Watson or the "Company") and the members Willis Tower Watson's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Willis Tower Watson and Aon plc and its affiliates ("Aon").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement and Registration

Statement on Form S-4 (the "Registration Statement") to be filed on May 8, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Aon will acquire all of Willis Tower Watson's outstanding common stock, and Willis Tower Watson will become a wholly-owned subsidiary of Aon (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Willis Tower Watson stockholder will receive 1.08 Class A ordinary shares of Aon (the "Merger Consideration"). After the closing of the Proposed Transaction, Aon shareholders will own approximately 62.3% of the combined company and Willis Tower Watson will own approximately 37.7% of the combined company.

3. As discussed below, Defendants have asked Willis Tower Watson's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Willis Tower Watson's stockholders or, in

the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because this District is where a substantial part of the events or omissions giving rise to the claim occurred, including the negotiation of the Merger Agreement.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Willis Tower Watson stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Anna C. Catalano has served as a member of the Board since January 4, 2016.

11. Individual Defendant Victor F. Ganzi has served as a member of the Board since January 4, 2016 and has served as Non-Executive Chairman of the Company Board since January 1, 2019.

12. Individual Defendant John J. Haley has served as a member of the Board since January 4, 2016 and is also the Company's Chief Executive Officer.

13. Individual Defendant Wendy E. Lane has served as a member of the Board since January 4, 2016.

14. Individual Defendant Brendan R. O'Neill has served as a member of the Board since January 4, 2016.

15. Individual Defendant Jaymin B. Patel has served as a member of the Board since January 4, 2016.

16. Individual Defendant Linda D. Rabbitt has served as a member of the Board since January 4, 2016.

17. Individual Defendant Paul Thomas has served as a member of the Board since January 4, 2016.

18. Individual Defendant Wilhelm Zeller has served as a member of the Board since January 4, 2016.

19. Defendant Willis Tower Watson is a public limited company incorporated in Ireland and maintains its principal offices at 51 Lime Street, London, EC3M 7DQ. The address in which notices and other communications regarding the Proposed Transaction is to be sent is 200 Liberty Street, New York, New York 10281.  The Company's stock trades on the NASDAQ Stock Exchange under the symbol "WLTW."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.      **The Proposed Transaction**

22.     Willis Tower Watson, operates as an advisory, broking, and solutions company worldwide. The Company's Human Capital and Benefits segment offers actuarial support, plan design, and administrative services for traditional pension and retirement savings plans; plan management consulting, broking, and administration services for health and group benefit programs; and benefits outsourcing services. It also provides advice, data, software, and products to address clients' total rewards and talent issues. Its Corporate Risk and Broking segment offers risk advice, insurance brokerage, and consulting services in the areas of property and casualty, financial lines, and transport. The Company's Investment, Risk and Reinsurance segment offers capital markets-based products to insurance and reinsurance companies; software and technology, risk and capital management, products and pricing, financial and regulatory reporting, financial and capital modeling, merger and acquisition, outsourcing, and business management services; investment advice and solutions to pension funds and institutional investors; wholesale insurance broking services to retail and wholesale brokers; and underwriting and capital management, capital market, and advisory and brokerage services. Its Benefits Delivery and Administration segment provides primary medical and ancillary benefit exchange, and outsourcing services to active employees and retirees in the group and individual markets. This segment delivers healthcare and reimbursement accounts, including health savings accounts, health reimbursement arrangements, flexible spending accounts, and other consumer-directed accounts. The Company was formerly known as Willis Group Holdings Public Limited Company and changed its name to Willis Towers Watson Public Limited Company in January 2016. Willis Towers Watson Public Limited Company was founded in 1828 and is based in London, the United Kingdom.

23. On March 9, 2020, the Company and Aon jointly announced the Proposed Transaction:

> LONDON, March 9, 2020 /PRNewswire/ -- Aon plc (NYSE:AON) and Willis Towers Watson (NASDAQ: WLTW) today announced a definitive agreement to combine in an all-stock transaction with an implied combined equity value of approximately $80 billion.4
>
> "The combination of Willis Towers Watson and Aon is a natural next step in our journey to better serve our clients in the areas of people, risk and capital," said Willis Towers Watson CEO John Haley. "This transaction accelerates that journey by providing our combined teams the opportunity to drive innovation more quickly and deliver more value."
>
> "This combination will create a more innovative platform capable of delivering better outcomes for all stakeholders, including clients, colleagues, partners and investors," said Aon CEO Greg Case. "Our world-class expertise across risk, retirement and health will accelerate the creation of new solutions that more efficiently match capital with unmet client needs in high-growth areas like cyber, delegated investments, intellectual property, climate risk and health solutions."
>
> **Strategic Rationale**
>
> - **Combines two highly complementary businesses into a technology-enabled global platform that is more relevant and responsive to client needs.** The transaction unites firms that share a belief in the power of data-driven insights to create new sources of client value.
>
> - **Provides opportunity to expand and further accelerate execution against the existing Aon United and Willis Towers Watson growth strategies.** The new firm will have an established focus on client value and its combined management teams have considerable experience with the integration of large, complex transactions. The teams have a shared appreciation for the importance of colleague development, the effectiveness of a one-firm growth strategy and the value of its application to the combined enterprise.
>
> - **Expected to drive year one earnings accretion to Aon adjusted EPS with free cash flow accretion of more than**

- **10% after full realization of $800 million of expected pre-tax synergies.** The transaction is expected to generate more than $10 billion in shareholder value creation from the capitalized value of expected pre-tax synergies, based on the blended 2020 price to earnings ratio of Willis Towers Watson and Aon UK on 6 March 2020, net of $2.0 billion in expected one-time transaction, retention and integration costs.

- **Ongoing commitment to long-term financial goals of mid-single digit or greater organic revenue growth and double-digit free cash flow growth.** The combined platform generated significant revenue of approximately $20 billion and free cash flow of $2.4 billion in 2019. The combined firm will be well-positioned to immediately deliver mid-single digit organic revenue growth or greater and, over the long term, double-digit free cash flow growth.

- **Strong balance sheet and a commitment to a disciplined capital management approach based on Return on Invested Capital (ROIC).** Strong cash flow ensures ability to invest disproportionately in highest return areas of growth and innovation for the benefit of clients. The combined firm is committed to maintaining Aon's current credit rating.

**Structure and Governance**

The combined company, to be named Aon, will be the premier, technology-enabled global professional services firm focused on the areas of risk, retirement and health.

Aon will maintain operating headquarters in London, United Kingdom. John Haley will take on the role of Executive Chairman with a focus on growth and innovation strategy. The combined firm will be led by Greg Case and Aon Chief Financial Officer Christa Davies, along with a highly experienced and proven leadership team that reflects the complementary strengths and capabilities of both organizations. The Board of Directors will comprise proportional members from Aon and Willis Towers Watson's current directors.

**Transaction Details**

Under the terms of the agreement unanimously approved by the Boards of Directors of both companies, each Willis Towers

Watson shareholder will receive 1.08 Aon ordinary shares for each Willis Towers Watson ordinary share, and Aon shareholders will continue to own the same number of ordinary shares in the combined company as they do immediately prior to the closing. Upon completion of the combination, existing Aon shareholders will own approximately 63% and existing Willis Towers Watson shareholders will own approximately 37% of the combined company on a fully diluted basis.

Aon anticipates that the transaction will provide annual pre-tax synergies and other cost reductions of $800 million by the third full year of combination, thereby allowing the firm to continue significant investment in innovation and growth. Potential revenue synergies due to complementary capabilities are expected but not included in the synergy estimates. The principal sources of potential synergies and other cost reductions are as follows:

- Approximately 73% from the consolidation of business and central support functions, including leveraging the capabilities of the Aon Business Services operational platform across the combined group; and

- Approximately 27% from the consolidation of infrastructure related to technology, real estate and third-party contracts

The transaction is expected to be accretive to Aon adjusted EPS in the first full year of the combination with peak adjusted EPS accretion in the high teens after full realization of $800 million of pre-tax synergies. Willis Towers Watson and Aon anticipate savings of $267 million in the first full year of the combination, reaching $600 million in the second full year, with the full $800 million achieved in the third full year. Free cash flow accretion is expected to breakeven in the second full year of the combination with free cash flow accretion of more than 10% after full realization of synergies. The transaction is expected to generate over $10 billion of shareholder value creation from the capitalized value of the expected pre-tax synergies, based on the blended 2020 price to earnings ratio of Willis Towers Watson and Aon UK on 6 March 2020, net of $2.0 billion in one-time transaction, retention and integration costs.

The combined firm is committed to maintaining long-term financial goals of mid-single digit or greater organic revenue growth and double-digit free cash flow growth; and is expected to maintain Aon's current credit rating.

It is intended that the combination will be implemented by means of a court-sanctioned scheme of arrangement of Willis Towers Watson and Willis Towers Watson Shareholders under Chapter 1, Part 9 of the Irish Companies Act of 2014.

It is expected that the Reorganization of the Aon Group described in the Reorganization Proxy Statement will be completed prior to the completion of the combination, such that prior to completion of the combination, Aon Ireland will be the publicly traded parent company of the Aon Group. The Reorganization remains conditional on, among other things, the sanction of the UK scheme of arrangement forming part of the Reorganization by the UK Court, as more particularly described in the Reorganization Proxy Statement. Upon completion of the Reorganization, it is expected that the Aon Ireland Directors will be the same as the current Aon UK Directors.

The transaction is subject to the approval of the shareholders of both Aon Ireland and Willis Towers Watson, as well as other customary closing conditions, including required regulatory approvals. The parties expect the transaction to close in the first half of 2021, subject to satisfaction of these conditions.

**Advisors**

Aon's financial advisor in respect of the Proposed Combination is Credit Suisse Securities (USA) LLC and its legal advisors are Latham & Watkins, LLP, Freshfields Bruckhaus Deringer LLP and Arthur Cox.

Willis Towers Watson's financial advisor in respect of the Proposed Combination is Goldman Sachs & Co. LLC and its legal advisors are Weil, Gotshal & Manges LLP, Skadden, Arps, Slate, Meagher & Flom LLP and Matheson.

\* \* \*

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Willis Tower Watson's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess

whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B. **The Materially Incomplete and Misleading Registration Statement**

25. On May 8, 2020, Willis Tower Watson and Aon jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Registration Statement fails to provide material information concerning Willis Towers Watson's and Aon's financial projections. The Registration Statement discloses management-prepared financial projections which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the Willis Towers Watson management prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the Company's financial advisor with forming a view about the stand-alone valuation of Aon and the Company. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management from each company provided to the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up

with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Willis Towers Watson Standalone Projections prepared by Company management for fiscal years 2020 through 2024, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics (i) Adjusted EBITDA (ii) Adjusted Net Income; (iii) Unlevered Free Cash Flow; (iv) Levered Free Cash Flow; and (iv) Adjusted Earnings Per Share; but fails to disclose: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G.

28. For the Aon Standalone Projections prepared by Aon management and provided to Company management for fiscal years 2020 through 2025, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow; but fails to disclose: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G.

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed

or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis* for the Company Standalone basis, the Registration Statement fails to disclose: (i) Goldman Sachs' basis for applying price to next-twelve-months estimated cash earnings per share multiples of 15.5x to 17.5x to estimates of NTM earnings per share for each of the fiscal years 2020 to 2022; and (ii) the inputs underlying the illustrative discount rate of 5.7%.

33. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis* for the combined company, the Registration Statement fails to disclose: (i) Goldman Sachs' basis for applying price to next-twelve-months estimated cash earnings per share

multiples of 16.4x to 20.3x to estimates of NTM earnings per share for each of the fiscal years 2020 to 2022; and (ii) the inputs underlying the illustrative discount rate of 5.7%.

34. With respect to Goldman Sachs's *Illustrative Discounted Cash Flow Analysis* for Willis Tower Watson, the Registration Statement fails to disclose: (i) the terminal values of Willis Tower Watson; (ii) the inputs and assumptions underlying the use of the discount rate range of 5.5% to 6.5%; (iii) the basis of applying the enterprise value multiple range of 11.0x to 13.0x; (iv) the Company's target capital structure weightings; (v) the cost of long-term debt; (vi) after-tax yield on permanent excess cash; (vii) future applicable marginal cash tax rate; (viii) the certain financial metrics for the U.S. financial markets generally that were considered; (ix) the Company's Net Debt as of December 31, 2019; and (x) the number of fully diluted outstanding shares of the Company.

35. With respect to Goldman Sachs's *Illustrative Discounted Cash Flow Analysis* for Aon, the Registration Statement fails to disclose: (i) the terminal values of Aon; (ii) the inputs and assumptions underlying the use of the discount rate range of 5.5% to 6.5%; (iii) the basis of applying the enterprise value multiple range of 15.5x to 17.0x; (iv) Aon's target capital structure weightings; (v) the cost of long-term debt; (vi) after-tax yield on permanent excess cash; (vii) future applicable marginal cash tax rate; (viii) the certain financial metrics for the U.S. financial markets generally that were considered; (ix) Aon's Net Debt as of December 31, 2019; and (x) the number of fully diluted outstanding shares of Aon.

36. With respect to Goldman Sachs's *Pro Forma Discounted Cash Flow Analysis and Illustrative Present Value of Aon Shares to be Received by WTW Shareholders in the Business Combination Agreement*, the Registration Statement fails to disclose: (i) the terminal values of Aon pro forma; (ii) the inputs and assumptions underlying the use of the discount rate range of

5.5% to 6.5%; (iii) the basis of applying the enterprise value multiple range of 13.6x to 15.3x; (iv) the Company's target capital structure weightings; (v) the Company's and Aon's Net Debt as of December 31, 2019; and (vi) the number of fully diluted outstanding shares of pro forma Aon.

37. With respect to Goldman Sachs' *Premia Analysis*, the Registration Statement fails to disclose (i) the acquisition transactions observed by Goldman Sachs in the analysis; and (ii) the premia paid in such transactions.

38. With respect to Goldman Sachs' *Illustrative Contribution Analysis*, the Registration Statement fails to disclose the individual inputs and assumptions for enterprise value, implied equity value from the mid-points of the Discounted Cash Flow Analysis, market capitalization and number of employees for Willis Towers Watson, Aon, and the combined entity resulting from the transaction based on the projections.

39. With respect to Goldman Sachs' *Selected Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Goldman Sachs.

40. With respect to Goldman Sachs' *Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Goldman Sachs.

41. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial analyses that were prepared by financial advisors and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

45. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and

disclose such information to stockholders although they could have done so without extraordinary effort.

46. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

47. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of Willis Tower Watson within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Willis Tower Watson, and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Willis Tower Watson, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Willis Tower Watson, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

52. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 11, 2020

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*